**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

NICHOLE L. SHINGLER ,                    )
                                          )    CASE NO.    5:08-cv-727
                 Plaintiff,               )
                                          )    JUDGE NUGENT
                                          )
         v.                               )    MAGISTRATE JUDGE VECCHIARELLI
                                          )
MICHAEL J. ASTRUE,                        )
Commissioner of Social Security,          )
                                          )    <u>**REPORT & RECOMMENDATION**</u>
                 Defendant.               )

  Plaintiff, Nichole L. Shingler ("Shingler"), challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying Shingler's applications for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 423 and 1381(a).  This court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned United States Magistrate Judge for a report and recommendation pursuant to a referral under Local Rule 72.2(b).

  For the reasons set forth below, the final decision of the Commissioner should be AFFIRMED.

## I.  Procedural History

Schingler filed an applications for SSI on April 30, 2004, alleging disability as of February 1, 2004 due to reflex sympathetic dystrophy, carpal tunnel syndrome, and depression.  Her application was denied initially and upon reconsideration.  Shingler timely requested an administrative hearing.

Administrative Law Judge Thomas A. Ciccolini ("ALJ") held a hearing on May 22, 2007, at which Shingler, represented by counsel, and Carol Mosley, vocational expert ("VE") testified.  The ALJ issued a decision on June 8, 2007 in which he determined that Shingler is not disabled.  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied further review.  Shingler filed an appeal to this Court.

On appeal, Shingler claims that the ALJ failed to give proper weight to the opinion of Shingler's treating physician in determining Shingler's residual functional capacity.  The Commissioner disputes Shingler's claim.

## II.  Evidence

### A.    *Personal and Vocational Evidence*

Shingler was born on May 10, 1976, and was 31 years old at the time of her hearing.  Transcript p. 24 ("Tr." 24)  Shingler graduated from high school.  (Tr. 101)  Shingler worked as a general office clerk at her fiancé 's construction company from 1994 to 2003.  (Tr. 96)

### B.    *Medical Evidence*

Shingler underwent surgery for carpal tunnel syndrome on December 29, 2003.  (Tr. 190)  After the surgery, Shingler developed increased pain in her right hand with

2

numbness and tingling.  (Tr. 186)  Shingler was treated for the increased pain by her surgeon, Dr. H. Kurtis Briggs, and also attended occupational therapy.  (Tr. 186)  Shingler continued to have pain, and was referred by her surgeon to Dr. Michael Rivera, director of the Pain Center at Doctors Hospital of Stark County.  (Tr. 186)  Dr. Rivera diagnosed Shingler with complex regional pain syndrome of the upper extremity.[1]  Dr. Rivera prescribed a number of medications and scheduled Shingler for six stellate ganglion blocks.  (Tr. 187)  Shingler received the six stellate ganglion blocks between March 30, 2004 and May 11, 2004.  (Tr. 184, 169)  Shingler reported that her symptoms improved for three to four days after the blocks.  (Tr. 169,171,173, 175, 188)

On June 9, 2004, Shingler presented to Dr. Stanton-Hicks at the Cleveland Clinic Foundation, Division of Pain Management ("CCF").  (Tr. 313)  Dr. Stanton- Hicks diagnosed Shingler with complex regional pain syndrome.  He recommended continued treatment with medication, and recommended against further blocks since Shingler had received only temporary relief from the ganglion blocks.  (Tr. 313-317)  Dr. Rivera transferred care of Shingler to CCF on August 3, 2004.  (Tr. 188)  Shingler continued treatment with Dr. Stanton-Hicks at least through May 22, 2007, the date of the hearing. (Tr. 722).

---

[1]     Complex regional pain syndrome, also known as reflex sympathetic dystrophy (RSD) syndrome, is a chronic pain syndrome characterized by continuous, intense pain that gets worse, rather than better over time.  Symptoms include burning pain, changes in the temperature and color of the skin, sweating, and swelling.  http://www.ninds.nih.gov/disorders/reflex_sympathetic_dystrophy/ (last updated May 31,2008).

Shingler has also continued to treat with Dr. Vincent Perkowski, her primary care physician since October 10, 2003.  (Tr.408, 728)  On March 6, 2006, Dr. Perkowski diagnosed Shingler with reflex sympathetic dystrophy and chronic pain syndrome.  (Tr. 452) On April 19, 2006, Dr. Perkowski diagnosed Shingler with cervical degenerative disc disease in addition to the foregoing diagnosis.  (Tr. 418)  On April 28, 2006, Shingler was also diagnosed with seizure disorder and tachycardia.  (Tr. 417)

In addition to her ongoing treatment for RSD and chronic pain, Shingler was seen numerous times in the emergency room.  On July 7, 2004, Shingler presented to the emergency room with right arm pain.  She was diagnosed with right arm pain secondary to RSD. (Tr. 164-165) On July 27, 2004, Shingler presented to the emergency room with left leg pain and hip pain.  She was diagnosed with RSD and left leg pain.  (Tr. 162-163) On April 4, 2006, Shingler presented to the emergency room complaining of anxiety and pain throughout her body.  She was diagnosed with acute anxiety and early narcotic withdrawal.  (Tr. 392-393)

On March 30, 2006, Shingler was taken to the emergency room in respiratory arrest after her husband found her at home not breathing.  (Tr. 370)  She was tentatively diagnosed with respiratory arrest, hypokalemia, RSD, gastroesophageal reflux disease (GERD), irritable bowel syndrome, anxiety, syncopal episodes, and palpitations.  She was admitted to the intensive care unit. (Tr. 372-373) On March 31, 2006, Shingler underwent a consultation with Dr. Jeffrey Courson.  Dr. Courson listed the following impressions: status post respiratory arrest, stable and off respirator; history of palpitations; RSD with chronic pain disorder; hypokalemia; recurrent syncope.  (Tr. 430)  He recommended, among other things, a neurology consult.  (Tr. 431) On April 3, 2006, Shingler underwent

4

a neurology consult with Dr. James Bavis.  (Tr. 424)  Dr. Bavis opined that Shingler likely suffered from primary generalized epilepsy, although he was not entirely sure.  (Tr. 425)  On April 26, 2006, Dr. Bavis recommended that Shingler be seen by Dr. Nancy Foldvary of the CCF.  (Tr. 680-683)  From June 22, 2006 to June 26, 2006, Shingler underwent video EEG monitoring that resulted in a classification of non-epileptic seizures of the paroxysmal event type with an unknown etiology and associated conditions of conversion disorder, hypersomnia, RSD, and pain syndrome.  (Tr.  487)

On October 14, 2004, Dr. Diane Manos, a medical consultant with the Bureau of Disability Determination Services, completed a physical residual functional assessment of Shingler, with which Dr. Augusto Pangalangan concurred on April 8, 2005.  (Tr. 289-296)  They opined that Shingler could lift or carry 20 pounds occasionally; could frequently lift or carry ten pounds; could stand or walk about six hours in an eight hour work day; could sit for about six hours in an eight hour work day; had limited push/pull in the upper extremities; could never crawl or climb ladders, ropes, or scaffolds; was limited in fingering/feeling to frequently; should avoid concentrated exposure to extreme temperatures and vibrations; and should avoid all exposure to hazards.  (Tr. 289-296)

On April 17, 2006, Dr. Perkowski completed a physical residual functional capacity assessment of Shingler.  (Tr. 408-410)  Dr. Perkowski stated that he had been Shingler's primary care physician since October 10, 2003.  He diagnosed Shingler with RSD, lumbar degenerative disc disease, seizure disorder, and chronic pain.  He opined that Shingler could sit continuously for 15 minutes; stand continuously for 20 minutes; and could combine sitting, standing, and walking for less than two hours in an eight hour workday.  He opined that Shingler would need to lie down and rest at unpredictable intervals during

5

the workday, and this would likely happen every 20 minutes, and require a 20 minute rest. He opined that she could lift less than10 pounds frequently; 20 pounds occasionally; and never lift 50 pounds; she could not stoop or crouch.  Dr Perkowski opined that Shingler would have "good days" and "bad days" that would require her to miss work more than four times a month.  Finally, he opined that Shingler is unable to use her right arm due to RSD, she has significant stress and psychological limitations, and bright flashing lights induce seizures.  (Tr. 408-410)

### C.  *Hearing testimony*

At the hearing, Shingler testified as follows.  She had completed the 12th grade and had worked two and one half years toward an associate's degree.  (Tr. 715)  She worked from 1994 until 2003 as a bookkeeper for her fiancé's construction business.  (Tr.715-718) On December 29, 2003, Shingler had carpal tunnel surgery.  (Tr. 721) Within one day after the surgery she had extreme burning pain, and that within approximately two and one half weeks of surgery, she was diagnosed with RSD.  (Tr. 721)  Shingler went to three years of therapy; however, her insurance discontinued paying because she was not improving. (Tr. 721-722)  She treats with the CCF pain management department where she receives pain medication.  She had previously received ganglier blocks, as well.  (Tr. 722)  In addition to RSD, she has osteoporosis, degenerative disc disease, arthritis, and GERD. (Tr. 722-723) She has epilepsy, and is treating with Dr. Bavis, a neurologist.  (Tr. 723)

Shingler lives with her fiancé and two children, ages seven and eleven.  (Tr. 724, 726)  She does not vacuum, or do laundry.  She can dust in 20 minute intervals, and can go grocery shopping for 20 to 30 minutes.  The store puts her groceries in her car, and her fiancé unloads them.  (Tr. 724-725)  She has RSD in her coccyx sacrum, hips, legs, and

6

feet that limits her ability to walk to about 20 minutes.  (Tr. 726)  She can sit comfortably for about 20 minutes.  (Tr. 726)  She can lift two to three pounds with her right hand, and up to 10 pounds with her left hand.  (Tr. 726)  The pain in her wrist is never below seven, and it is higher than seven when her pain medication is not working.  (Tr. 725)

Shingler further testified that in addition to treating with the Cleveland Clinic and Dr. Bavis, she also treats with Dr. Perkowski, her primary care physician.  (Tr. 728)

The VE also testified at the hearing.  (Tr. 729)  The ALJ asked the VE to assume a hypothetical individual with Shingler's prior work experience who could lift, carry, push, or pull up to 10 pounds frequently, and only 15 pounds occasionally; could sit, stand or walk two thirds of an eight hour workday without assistance; had restrictions against working with heavy concentrations of dusts, fumes, or gases, and should not be around moving machinery or hazards; should not be exposed to unprotected heights, including ladders, ropes, and scaffolds; and had restrictions against frequent, fine manipulation with her right hand; and including a sit/stand option.  (Tr. 733-735)  The ALJ then changed the hypothetical to reflect an individual who could do work at the light exertional level.  (Tr. 736)[2]

The VE testified that such an individual could do work as a counter clerk, for which there are over 3,500 jobs state-wide, a deli clerk, for which there are 2,200 jobs state-wide, and a packager, for which there are over 4,000 jobs state-wide.  Each of these jobs is

---

[2]Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Although the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. § 416.967(b).  The ALJ's original hypothetical restricted occasional lifting to 15, rather than 20 pounds.

classified at the light exertional level.  (Tr. 736-737)

Shingler's attorney then asked the VE whether her response would change if she assumed an individual at the light exertional level, limited to 15 minutes sitting; and 20 minutes standing; with combined sitting, standing, walking for less than two hours.  The VE responded yes, her response would change, because that would be less than full time, and therefore the jobs would not exist.  (Tr. 742)

Shingler's attorney then asked the VE whether her response would change if she assumed that the individual would need to lie down at unpredictable intervals during the workday, that the need will occur about every 20 minutes, and that the individual will require rest for 20 minutes.  The VE responded that there would be no jobs for such an individual.  (Tr. 742-743)  The VE further testified that if an individual missed work 20 percent of the time, it would not rise to the level of full time work.  (Tr. 743)

### III.  Standard for Disability

A claimant is entitled to receive benefits under the Act when she establishes disability within the meaning of the Act.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981).  A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 416.905(a).  To receive SSI benefits, a recipient must also meet certain income and resource limitations.  20 C.F.R. §§ 416.1100 and 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process.  First, the claimant must demonstrate that she is not

currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second,  the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities."  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000).  Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled.  For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled.  *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

## IV.  Summary of Commissioner's Decision

In relevant part, the ALJ made the following findings:

1.     [T]he claimant has the residual functional capacity to perform the exertional and non-exertional requirements of basic work-related activities except for lifting, carrying, pushing and pulling more than 10 pounds frequently and 20 pounds more than occasionally; standing and/or walking for more than a total of about 6 hours in an 8-hour workday; sitting for more than a total of about 6 hours in an 8-hour workday (exertional); work involving heavy concentrated exposure to dusts, fumes, or gases; work involving exposure to moving machinery, hazards, or unprotected heights (including ladders, ropes, or scaffolds); or more than frequent fine manipulation with the right hand (non-exertional).

2.     [T]he claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

3.     Dr. Perkowski's lifting/carrying limitations appear consistent with that of the

objective medical evidence and the State Agency opinions.  However, I do not find support for the sitting, standing and walking limitations as well as the requirement that she miss time from work.  These are not consistent with subsequent clinical findings from the Cleveland Clinic Foundation... .

4.    The claimant has not been under a disability, as defined in the Social Security Act, since April 30, 2004, the date the application was filed (20 CFR 416.920(g)).

(Tr.18, 19, 23)

## V.  Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the administrative law judge's findings of fact and whether the correct legal standards were applied.  *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).*  Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

## VI.  Analysis

Shingler alleges that the ALJ erred by failing to accord proper weight to her treating physician's residual functional capacity assessment in determining Shingler's residual functional capacity.  The medical opinion of treating physicians should be given greater weight than those of physicians hired by the Commissioner.  *Lashley v. Secretary of*

10

*Health and Human Servs.,* 708 F.2d 1048 (6th Cir. 1983).  Medical opinions are statements about the nature and severity of a patient's impairments, including symptoms, diagnosis, prognosis, what a patient can still do despite impairments, and a patient's physical or mental restrictions.  20 C.F.R. § 404.1527(a)(2).  This is true, however, only when the treating physician's opinion is based on sufficient objective medical data and is not contradicted by other evidence in the record.  20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3); *Jones v. Secretary of Health and Human Services,* 945 F.2d 1365, 1370 & n.7 (6th Cir. 1991); *Sizemore v. Secretary of Health and Human Services,* 865 F.2d 709, 711-12 (6th Cir. 1988).  Where there is insufficient objective data supporting the treating physician's opinion and there is no explanation of a nexus between the conclusion of disability and physical findings, the fact finder may choose to disregard the treating physician's opinion.  *Landsaw v. Secretary of Health and Human Servs.,* 803 F.2d 211, 212 (6th Cir. 1986).  The fact finder must, however, articulate a reason for not according the opinions of a treating physician controlling weight.  *Shelman v. Heckler,* 821 F.2d 316 (6th Cir. 1987).

Even when a treating physician's opinion is found not to be entitled to controlling weight, it is still entitled to deference:

> Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected.  Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927.  In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

Social Security Ruling 96-2p, 1996 WL 374188, at *4.

When the adjudicator determines that the treating source's opinion is not entitled to controlling weight, he is required to articulate good reasons for the weight given to the treating source's medical opinion.  20 C.F.R. §§ 404.1527(d) (2) and 416.927.

> [T]he ...decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

Social Security Ruling 96-2p, 1996 WL 374188, at *5.

The ALJ accepted in part, and rejected in part, Dr. Perkowski's opinion. Specifically, the ALJ found that portions of Dr. Perkowski's opinion were inconsistent with other substantial evidence in the record.  (Tr. 19)  Having so found, the ALJ is required to give specific reasons for rejecting Dr. Perkowski's opinion, and to support his reasons with evidence in the record.  The ALJ has met this requirement.

The ALJ's decision provides in part:

> I find that Dr. Perkowski's lifting/carrying limitation appears consistent with that of the objective medical evidence and the State Agency opinions.  However, I do not find support for the sitting, standing, and walking limitations as well as the requirement that she miss time from work.  These are not consistent with subsequent clinical findings from the Cleveland Clinic Foundation, discussed below.

> During an examination in August 2005, the claimant reported good control of pain and anxiety with medication, but that the anxiety medication only worked for about 6 hours (Exhibit 16/52)

> Diane Manos, M.D., a medical consultant with the Bureau of Disability Determination Services (State Agency), completed a physical residual assessment of the claimant on October 14, 2004, with which Augusto Pangalangan, M.D. concurred on April 8, 2005.  They were of the opinion that the claimant could perform work at the light exertional level with limited push/pull in the upper extremities; could never crawl or climb ladders, ropes, or scaffolds; was limited in fingering/feeling to frequently; and should avoid concentrated exposure to extreme temperatures and vibration (Exhibit 5F).  These opinions are generally consistent with the objective medical evidence.

An examination at the Cleveland Clinic Foundation revealed strength in the upper and lower extremities that was within normal limits with the exception of pain complaints with the right hand.  Any weakness was mild, however.  The claimant responded well to ganglion blocks (Exhibit 6F/8).  The claimant was very histrionic during an exam, alternating between calm and crying moods (Exhibit 6F/3).

The claimant presented to the emergency room with respiratory arrest in March 2006.  The claimant was able to give bilateral hand grasps (Exhibit 13F/12).  An echocardiogram revealed no significant abnormalities, but generalized epilepsy was noted (Exhibit 13F/7).

The claimant continued to experience problems with narcotic drug withdrawal, including symptoms of anxiety (Exhibit 14F).

During a consult at the Cleveland Clinic Foundations with Nancy Foldvary-Schaefer, D.O., the claimant had normal muscle strength and tone bilaterally; no evidence of tremor; and a normal gait (Exhibit 17F/26).  The claimant experienced improvement in symptoms on a different medication regimen (Exhibit 20F/14).  The claimant reported that she did not have any difficulty performing or completing activities of daily living and did not have any concerns about personal safety (Exhibit 20F/11).  An examination in August 2006 revealed that the claimant was able to cross her legs, pick up her purse with her right arm, and had a normal gait (Exhibit 21F/16).  The claimant reported being able to shave her legs (Exhibit 21F/4).

Thus, as discussed above, the objective medical evidence does not provide a basis for finding limitations greater than those determined in this decision.

(Tr. 19-20)

As the forgoing illustrates, the ALJ gave specific reasons, which were supported by substantial evidence in the record, for rejecting parts of Dr. Perkowski's opinion.  The ALJ engaged in a detailed discussion of the objective medical evidence, and other evidence in the record.  This included an analysis of contradictory clinical findings of other treating physicians, and not merely the opinions of state agency doctors as argued by Shingler.  Therefore, Shingler is simply incorrect when she argues that the ALJ, "did not give good reasons why Dr. Perkowski's opinions were rejected and merely stated that they were not supported by the evidence on file." (Plaintiff's Brief on the Merits p. 16)  Notably, Shingler

makes no attempt to address the ALJ's analysis of the medical records, but merely argues in a conclusory manner that Dr. Perkowski's opinion is not inconsistent with the medical evidence.  Additionally, Shingler completely fails to address the ALJ's finding that Shingler's statements concerning the intensity, persistence, and limiting effects of her symptoms are not entirely credible.  A fair reading of the ALJ's opinion reflects that this was a significant factor in the ALJ's decision.  Shingler has failed to establish that the ALJ's opinion is not supported by substantial evidence.

## VII.  Decision

For the foregoing reasons, the Magistrate Judge finds the decision of the Commissioner supported by substantial evidence.  Accordingly, the decision of the Commissioner should be AFFIRMED.


s/ Nancy A. Vecchiarelli
U.S. Magistrate Judge


Date: November 14, 2008


## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days after being served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**

14